IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00280-REB-KLM

GEORGE D. SARNO,

        Plaintiff,

v.

JOHN REILLY,
DONALD BRIGHTWELL, and
DINO WILLIAMS,

        Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Defendants' **Motion to Dismiss First Amended Complaint** [Docket No. 19; Filed April 30, 2012] (the "Motion").  The Motion is referred to this Court for recommendation [#20].  On August 30, 2012, Plaintiff filed a Response [#26] in opposition to the Motion.  Defendants did not file a Reply.  The Court has reviewed the briefing, the case file, and the applicable law, and is fully advised in the premises.  For the reasons stated below, the Court respectfully **recommends** that the Motion [#19] be **GRANTED in part and DENIED in part**, as outlined below.

## I.  Background

      Plaintiff is a state prisoner in custody of the Colorado Department of Corrections ("CDOC") and is presently incarcerated at the Limon Correctional Facility ("LCF") in Limon, Colorado.  *Am. Compl.* [#18] at 2.  Plaintiff initiated this lawsuit *pro se* pursuant to 42 U.S.C.

§ 1983 on February 2, 2012. *Compl.* [#1] at 4. In short, he brings a procedural due process claim pursuant to the Fourteenth Amendment ("Claim One"); an equal protection claim pursuant to the Fourteenth Amendment ("Claim Two"); and a retaliation claim apparently asserting a violation of the First Amendment ("Claim Three"). *Am. Compl.* [#18] at 10-12. Plaintiff seeks declaratory judgment and injunctive relief against Defendants in their official capacities as well as nominal, compensatory, and punitive damages against each Defendant in his individual capacity. *Id.* at 14.

According to the allegations in the Amended Complaint, Plaintiff worked at LCF in various capacities for twenty years and retained an above-average work rating throughout that time. *Id.* at 4. From 2005 to 2011, he worked at LCF's power sewing shop. *Id.* On September 22, 2011, prison authorities investigated Plaintiff based on a disciplinary report asserting that he had unauthorized possession of multiple plastic bags in his shirt pocket. *Id.*

The next day, Disciplinary Officer Bryan Milburn ("Milburn") further investigated the report. *Id.* Plaintiff told Mr. Milburn that, after he threaded a sewing machine, he had forgotten to trash the bags, which were used to cover the spools of thread. *Id.* Plaintiff also mentioned that, since he had begun working at the power sewing shop, other long-term inmates with no prior disciplinary reports had inadvertently removed or lost more serious items, such a metal screwdriver, scissors, and nippers, but had been excused. *Id.* Mr. Milburn responded that he was aware of those incidents and that he would advise Defendant John Reilly ("Reilly"), the power sewing manager, that Plaintiff would not be charged with unauthorized possession. *Id.* at 4-5.

The next day, Plaintiff asserts that Defendant Reilly changed the incident report

against Plaintiff into a charge of theft. *Id.* at 5. Plaintiff states that Mr. Milburn told him that Defendant Reilly was upset that Plaintiff would not be prosecuted for unauthorized possession and so the theft charge was made in retaliation. *Id.* Mr. Milburn informed Plaintiff that he would not be prosecuted for that charge either. *Id.* Defendant Reilly then discharged Plaintiff from his job in the power sewing shop. *Id.*

On October 10, 2011, Plaintiff spoke with Defendant Donald Brightwell ("Brightwell"), a CDOC employee who was, according to Plaintiff, LCF's "sole job board member." *Id.* Plaintiff told Defendant Brightwell about the situation with Defendant Reilly and about Plaintiff's "unassigned-C status."[1] *Id.* Plaintiff asserts that Defendant Brightwell told him that, due to Defendant Reilly's conduct, Plaintiff's status would not be changed until he located another job at LCF. *Id.* In spite of this conversation, Plaintiff states that Defendant Brightwell still changed his status to "unassigned." *Id.* Plaintiff spoke with Mr. Milburn about this and asked whether Defendant Brightwell had spoken with him first, to which Mr. Milburn responded that Defendant Brightwell had not contacted him. *Id.* Plaintiff asserts that Defendant Brightwell had a duty to verify the incident report before changing Plaintiff's classification status, but that he failed to do so. *Id.*

Plaintiff asserts that he next spoke with Defendant Dino Williams ("Williams"), LCF's Program Manager, about Defendant Reilly and Defendant Brightwell. *Id.* at 6. Plaintiff avers that Defendant Williams told him he would speak with Mr. Milburn on the matter but that weeks passed with no change in Plaintiff's status. *Id.* Plaintiff states that when he

_____

[1] Plaintiff explains that the difference between "unassigned-C status" and "unassigned status" is that the former gives an inmate thirty days to find a new job without losing any privileges while the latter prohibits an inmate from having a job for thirty days and the inmate loses all of his privileges. *Am. Compl.* [#18] at 5.

asked Mr. Milburn if Defendant Williams had spoken with him, Mr. Milburn said no. *Id.* at 6-7.

Plaintiff states that around this same time, LCF instituted a new scheduling order for general population inmates to come out of their cells because Warden Angel Medina ("Medina") wanted to deliberately place rival gang members in the same unit instead of keeping them separated. *Id.* at 5-6. Warden Medina sent out a written memorandum and verbally informed everyone that he encouraged inmates to volunteer for incentive unit placement. *Id.* at 6. Plaintiff states that this change in policy meant that:

> The Department of Corrections is deliberately pitting rival gang members against each other to create an unsafe living environment for general population inmates. There are 51 inmates living in each pod. Three telephones, 6 showers, 5 table[s] that seat 4 inmates, 2 benches that seat 3 inmates, 1 TV, 1 microwave oven, and 1 cleaning bucket. General population inmates that work all day and unassigned inmates are given the same 30 minute a day pod time period. Inmates constantly [argue] over telephones, showers, and cleaning supplies. Numerous fights have broken-out with gang members and nongang members arguing over these things. There have been five staff assaults in a 30 day period also.

*Id.* at 9.

Plaintiff avers that he was removed from the incentive living unit because of his unassigned status and removal from the power sewing shop. *Id.* at 6. He states that for sixty days he was allowed out of his cell for only thirty minutes a day, five days a week. *Id.* He was not permitted exercise time, even though disciplinary and administrative segregation inmates were provided with a full hour of time out of their cells and could exercise in the pod. *Id.* He was forced to choose between seeking legal help from other inmates, accessing prison staff for grievances, showering, cleaning out his cell, or making prepaid telephone calls. *Id.* He was only permitted 20-40 minutes at the gym each week.

*Id.* Plaintiff states that he is 65 years old and that he suffers from high cholesterol, for which he takes medication. *Id.* He asserts that exercise is part of his treatment to reduce his cholesterol and when he was prevented from exercising he started experiencing headaches, chest pains, and dizziness, as well as mental health deterioration "to the point of paranoia experiences of dying in my sleep from a heart attack." *Id.* He states that he lost a lot of sleep and suffered physical pain from these experiences. *Id.*

Defendants seek dismissal of Plaintiff's entire lawsuit. First, they assert claims for retroactive declaratory relief against them in their official capacities are barred pursuant to the Eleventh Amendment. *Motion* [#19] at 4. Second, they argue that Plaintiff fails to state an actionable claim for a due process violation under the Fourteenth Amendment. *Id.* at 4-6. Third, they argue that Plaintiff fails to state an actionable claim for a "class of one" equal protection violation. *Id.* at 6-8. Fourth, they argue that Plaintiff fails to state an actionable retaliation claim. *Id.* at 8-9. Fifth, they argue that they are entitled to qualified immunity. *Id.* at 9-10. Sixth, they argue that Plaintiff is not entitled to compensatory damages. *Id.* at 10. Finally, they argue that Plaintiff fails to state a claim for punitive damages. *Id.* at 10-11.

## II.  Standard of Review

### A.  Fed. R. Civ. P. 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it. Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); see Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly

construed. *F. & S. Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.* By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual attack, the moving party challenges the facts on which subject-matter jurisdiction depends. *Id.* The Court therefore must make its own findings of fact. Id. In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987)). The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule12(b)(1) into a motion for summary judgment pursuant to Rule 56. *Id.*

## B.    Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th

Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).  That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden."  *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully."  *Id.* (citation omitted).  As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).

The Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, Plaintiff, as a *pro se* litigant, must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

As an additional preliminary matter, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d at 266, 268-70 (4th Cir. 1994). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation omitted). As such, "sweeping intervention in the management of state prisons is rarely

-8-

appropriate when exercising the equitable powers of the federal courts." *Taylor*, 34 F.3d at 269 (citations omitted).

### III.  Analysis

**A.      Eleventh Amendment**

The Court first considers Defendants' subject-matter jurisdiction argument with respect to the Eleventh Amendment. *See Herrara v. Alliant Specialty Ins. Servs., Inc.*, No. 11-cv-00050-REB-CBS, 2012 WL 959405, at *3 (D. Colo. Mar. 21, 2012) (stating that issues of subject matter jurisdiction "must be resolved before the court may address other issues presented in the motion").

Plaintiff's request for declaratory relief against Defendants in their official capacities specifically states that he seeks "Declaratory Judgment that [Defendants'] conduct violated the Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and Article II, Section 25 to the Colorado Constitution." *Am. Compl.* [#18] at 14.  Without any specific analysis, Defendants argue that Plaintiff seeks, in part, retroactive declaratory relief against them in their official capacities and that this is barred by the Eleventh Amendment. *Motion* [#19] at 4.  Plaintiff responds with four arguments against dismissal of his claim for declaratory relief: (1) the State can waive its Eleventh Amendment sovereign immunity; (2) his request for costs to remedy past conduct does not turn his requests for declaratory and injunctive relief into forms of retroactive relief; (3) the relief he seeks is prospective, not retroactive; and (4) the Amended Complaint states that "Defendants waive their Eleventh Amendment protection when they knowingly violated the Federal rights of the Plaintiffs' State created liberty interests." *Response* [#26] at 3-4.

First, the Court notes that Plaintiff's request for declaratory relief with respect to the

Colorado Constitution is inappropriate. A federal district court cannot order state officials to abide by state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Second, although Plaintiff is correct that a State may waive its Eleventh Amendment sovereign immunity, "[t]he State's consent to suit must be 'unequivocally expressed' in the relevant statute's text." *Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (2011). Waiver of immunity may not be implied. *Coll. Savings Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 682 (1999). There is no clear indication here that the State has waived its immunity either by statute or for the purpose of this particular lawsuit.

Third, although Plaintiff asserts otherwise, his declaratory judgment claim seeks retroactive relief. Claims for retrospective declaratory relief are barred by the Eleventh Amendment. *See Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1232 (10th Cir. 2004). Plaintiff seeks a declaration from the Court that Defendants, in the past, violated his rights:

> Plaintiff seeks declarations framed in the past tense. Even if [P]laintiff demonstrated past constitutional violations, the relief would do nothing more than give [P]laintiff the satisfaction of a declaration that in the past, [D]efendants wronged him. Retrospective declaratory relief would not impact the present or future legal relations of the parties. In this instance, declaratory relief would be hollow and fruitless.

*Van Deelen v. Fairchild*, No. Civ.A. 05-2017, 2005 WL 3263885, at *8 (D. Kan. Dec. 1, 2005). Accordingly, the Court finds that Plaintiff's request for declaratory relief should be dismissed for lack of subject matter jurisdiction pursuant to the Eleventh Amendment.

**B.     Qualified Immunity**

**1.     Standard**

In their individual capacities, Defendants assert that they are entitled to qualified

immunity from suit on Plaintiff's claims.   Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known.   *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   Qualified immunity also offers protection from trial and other burdens of litigation.   *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When Defendants raise qualified immunity in a Rule 12(b)(6) motion to dismiss, the Court employs a two-step process.   One part of the inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation.   *Saucier v. Katz*, 533 U.S. 194, 201 (2001).   "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."   *Id.*   However, "if a violation could be made out on a favorable view of the parties' submissions, the [other part of the inquiry] is to ask whether the right was clearly established."   *Id.*   The Supreme Court has held that courts are no longer required to address the inquiries in a particular order when evaluating a qualified immunity claim. *Pearson v. Callahan*, 555 U.S. 223 (2009).

Courts must determine whether the constitutional right was clearly established in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005).   That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in each defendant's position] that his conduct was unlawful in the situation he confronted."   *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).   Further, in order for a constitutional right to be clearly established, there

must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right. *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).   In other words, there must be case authority in which a constitutional violation was found based upon similar conduct. *See Callahan v. Millard County*, 494 F.3d 891, 903 (10th Cir. 2007).

### 1.    Due Process

Defendants argue that Plaintiff does not have a protected liberty or property interest in his termination from a prison job. *Motion* [#19] at 4-6.   To state a Fourteenth Amendment due process claim, a plaintiff must allege facts supporting two elements of the claim. *See Bartell v. Aurora Pub. Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001).   First, he must show that he possesses a protected liberty interest. *See id.*; *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001).   Second, he must show that he was not afforded the appropriate level of process. *See Bartell*, 263 F.3d at 1149.   Here, Defendants argue that Plaintiff's Amended Complaint fails to make sufficient allegations to satisfy the first element of the Fourteenth Amendment analysis. *Defs.' Motion* [#48] at 13-14.

Liberty interests "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state-law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).   While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 228 (2001), this reality is tempered by the recognition that "[t]here is no iron curtain drawn between the Constitution and the prisons of this country."

*Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974).

The Tenth Circuit has ruled that, "[t]he Constitution does not create a property or liberty interest in prison employment." *Ingram v. Papalia*, 804 F.2d 595, 596 (10ᵗʰ Cir. 1986). The *Ingram* court further stated that, for a property or liberty interest to exist, state law must create it with "language of an unmistakably mandatory character." *Id.* Plaintiff directs the Court's attention to six Colorado statutes which he avers contain this mandatory language. *Am. Compl.* [#18] at 7-8 (citing C.R.S. § 17-20-115 (stating that inmates "shall perform labor"); C.R.S. 17-20-117 (stating that inmates "shall be put to . . . work"); C.R.S. §§ 17-20-114.5, 17-24-114, 17-29-101, 17-29-103). Plaintiff is correct that, even though the United States Constitution does not require that all prisoners be provided with jobs, Colorado law does so. *See Ramos v. Lamm*, 485 F. Supp. 122, 174 (D.C. Colo. 1979) (*rev'd in part on other grounds by Ramos v. Lamm*, 639 F.2d 559 (10ᵗʰ Cir. 1980)). However, "Colorado law does not create a protected property or liberty interest to either employment in any particular job or continued employment in any particular job." *Ingram*, 804 F.2d at 596; C.R.S. § 17-24-102(1). Thus, Plaintiff had no liberty interest in his employment at the power sewing shop.

The Court also notes that the Tenth Circuit reaffirmed its holding in *Ingram* in *Smith v. Ortiz*, No. 05-1211, 2006 WL 620871, at *2 (10ᵗʰ Cir. Mar. 14, 2006). In that case, the incarcerated plaintiff was convicted of a prison disciplinary offense and, as a result, lost his minimum wage prison job. *Id.* at *1. The Tenth Circuit held that the plaintiff had no constitutionally protected liberty or property interest in his prison job. *Id.* at 2.

Accordingly, the Court finds that Plaintiff has failed to sufficiently allege a due process violation and, therefore, Defendants are entitled to qualified immunity on this claim.

## 2.    Equal Protection

Defendants next argue that Plaintiff has not alleged sufficient facts to support a class-of-one equal protection violation. *Motion* [#19] at 6-8. To succeed on such a claim, Plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Rocha v. Zavaras*, 443 Fed. App'x 316, 319 (10th Cir. 2011) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). Plaintiff must demonstrate that "others, similarly situated in every material respect, were treated differently." *Rocha*, 443 Fed. App'x at 316 (internal quotation marks omitted) (quoting *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011)). Plaintiff must also establish that "this difference in treatment was without rational basis, that is, the government action was irrational and abusive and wholly unrelated to any legitimate state activity." *Rocha*, 443 Fed. App'x at 316 (internal quotation marks omitted) (quoting *Kansas Penn Gaming*, 656 F.3d at 1216).

Plaintiff adequately alleges facts supporting the first element, in that he has identified three similarly-situated persons who were allegedly treated differently with respect to initial termination from the power sewing shop by Defendant Reilly. *Am. Compl.* [#18] at 4. These three inmates all worked in the power sewing shop, were all discovered inadvertently removing or losing contraband, and were all excused without further repercussion. *Id.* Specifically, Plaintiff alleges that inmate William Littermier removed a metal screw-driver, that inmate Simson Bay lost a pair of scissors, and inmate Warner lost a pair of nippers.[2]

---

[2] Although there is certainly a distinction between removing items and losing items, the Amended Complaint can fairly be read to assert that the disciplinary procedures and punishments for each offense were the same.

*Id.*  Plaintiff alleges that he was discovered inadvertently removing several plastic bags from spools of thread and was thereafter fired from his job.  *Id.*  The Court therefore finds that Plaintiff has sufficiently alleged facts demonstrating that similarly-situated persons were treated differently.

Second, Plaintiff asserts that there is no rational basis for his termination.  He states that the Disciplinary Officer, Mr. Milburn, was aware of the previous incidents and accordingly chose not to charge Plaintiff with unauthorized possession.  *Id.* at 5.  He also states that power sewing manager, Defendant Reilly, took offense to this and attempted to have Plaintiff prosecuted for theft, which Mr. Milburn again refused to do.  *Id.*  Having failed to get Plaintiff charged, Defendant Reilly then fired Plaintiff.  *Id.*  Based on these allegations, the Court finds that Defendant Reilly's conduct may have been "irrational and abusive and wholly unrelated to any legitimate state activity."  *Rocha*, 443 Fed. App'x at 316.

The Court therefore finds that Plaintiff has adequately alleged an equal protection violation against Defendant Reilly.  In the Motion, Defendant Reilly does not argue that Plaintiff cannot meet the second element of the qualified immunity analysis, *i.e.*, that the right was clearly established at the time when the events underlying this matter occurred. Rather, he merely argues that "Plaintiff has failed to set forth allegations that render plausible constitutional violations."  *Motion* [#19] at 10.  Accordingly, the Court finds that Defendant Reilly is not entitled to qualified immunity on this claim.

However, the Court reaches a different conclusion with respect to Defendant Brightwell and Defendant Williams in their individual capacities.  Plaintiff has not alleged any similarly-situated inmates who spoke with either Defendant about unfair termination

and who received different treatment from them. In essence, Plaintiff merely states that neither one investigated his situation as each allegedly promised to do. He asserts that Defendant Brightwell changed Plaintiff's status from "unassigned-C" to "unassigned" without verifying the incident report. *Am. Compl.* [#18] at 5. Defendant Williams allegedly simply failed to follow up and resolve Plaintiff's complaints with respect to the matter. *Id.* at 6-7. These allegations are insufficient to demonstrate similarly-situated individuals were treated differently and that the government action (or inaction) was irrational and abusive and wholly unrelated to any legitimate state activity. *See Rocha*, 443 Fed. App'x at 316; *see also Smith*, 2006 WL 620871, at *3 (affirming district court's decision that incarcerated plaintiff's equal protection claim failed where he did not identify any similarly-situated inmate who was treated differently).

Accordingly, the Court finds that Plaintiff has failed to allege an equal protection violation against Defendants Brightwell and Williams and, therefore, that they are entitled to qualified immunity on this claim.

### 3. Retaliation

Defendants also argue that Plaintiff cannot establish a prima facie case against them for retaliation. To maintain a retaliation claim under section 1983, a plaintiff must demonstrate: (1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendants' actions caused the plaintiff to suffer an injury sufficient to chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' adverse action was substantially based on the plaintiff's exercise of a constitutionally protected right. *See Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 847 (10th Cir. 2005).

Defendants make two arguments here. First, they argue that Plaintiff has not

alleged any retaliatory animus. *Motion* [#19] at 9. Second, they argue that Plaintiff's contentions do not demonstrate that he successfully availed himself of prison disciplinary procedures, because he merely spoke with Defendants and succeeded in having the incident charges dropped without having to go through more formal avenues. *Id.* Addressing this second argument first, Defendants have not connected this argument with any element of a section 1983 retaliation claim. In fact, there is no element that states that the plaintiff must have successfully availed himself of such procedures before he can succeed on a retaliation claim, and Defendants have not directed the Court's attention to any case that so holds. Accordingly, the Court finds this argument to be without merit.

Returning to Defendants' retaliatory-animus argument, Plaintiff need only present allegations, even if merely circumstantial, that could support an inference that Defendants took action against him based, at least in part, on improper motives. *See Love v. Behler*, No. 00-3059-JWL, 2000 WL 1859003, at *4 (D. Kan. 2000) (quoting *Smith v. Maschner*, 899 F.2d 940, 947 10th Cir. 1990)); *see also Quintana v. Edmond*, No. 06-cv-01 187-WDM-KLM, 2008 WL 3539265, at *3 (D. Colo. Aug. 12, 2008) (emphasizing instructions from the Tenth Circuit Court of Appeals that where inmate's evidence on summary judgment "could establish that the adverse action was motivated at least in part by an improper motive, this is sufficient to create an issue of fact as to whether retaliatory animus was the 'but for' cause of the decision"). In attempting to prove the causal connection between the conduct and the adverse action suffered, the presentation of circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation. *See Smith*, 899 F.2d at 949 (holding that the inmate sufficiently supported retaliation claim with "only means available

to him–circumstantial evidence of the suspicious timing of his discipline, coincidental transfers of his witnesses and assistants"); *Harris v. Fleming*, 839 F.2d 1232, 1236-38 (7th Cir. 1988) (finding that the pattern and timing of firings and cell transfers were sufficient to establish a question of retaliation); *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979) (holding that the plaintiff's allegations of a "chronology of events" may be read as "providing some support for an inference of retaliation").

Turning first to the claim against Defendant Reilly, Plaintiff allegedly spoke with Mr. Milburn about whether Plaintiff would be charged with unauthorized possession, although it is unclear on whose initiative this conversation occurred.  Only after Mr. Milburn's refusal to make this charge did Defendant Reilly change the requested charge to theft.  Plaintiff again spoke with Mr. Milburn; again it is unclear on whose initiative this second conversation occurred.  Once again, only after Mr. Milburn's refusal to make this charge did Defendant Reilly terminate Plaintiff.  Based on these allegations, the Court finds that, at this early stage of litigation, Plaintiff has alleged enough to support the inference that Defendant Reilly may have taken action against him based, at least in part, on improper motives and retaliatory animus.  *See Love*, 2000 WL 1859003, at *4; *see also Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001) ("Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom.").

The Court therefore finds that Plaintiff has adequately alleged a retaliation claim against Defendant Reilly.  As with the equal protection claim, Defendant Reilly does not argue that Plaintiff cannot meet the second element of the qualified immunity analysis, *i.e.*, that the right was clearly established at the time the events underlying this matter occurred.

Accordingly, the Court finds that Defendant Reilly is not entitled to qualified immunity on this claim.

However, as with Plaintiff's equal protection claim, the Court reaches a different conclusion with respect to Defendant Brightwell and Defendant Williams on Plaintiff's retaliation claim.  Plaintiff has not alleged any facts indicating that either Defendant may have made any decision with respect to him based on improper motives.  Although neither Defendant did what Plaintiff asked him to do, there is no indication that any retaliatory animus was involved.  As noted above, Plaintiff merely states that neither one investigated his situation as each allegedly promised to do.  He asserts that Defendant Brightwell changed Plaintiff's status from "unassigned-C" to "unassigned" without verifying the incident report. *Am. Compl.* [#18] at 5.  Defendant Williams allegedly simply failed to follow up and resolve Plaintiff's complaints with respect to the matter. *Id.* at 6-7.  These allegations are insufficient to demonstrate retaliatory animus or improper motives. *See Nagim v. Napolitano*, 2010 WL 6001597, at *6 (D. Colo. Oct. 4, 2010) (finding that the plaintiff failed to provide enough specific factual detail in relation to his allegation that he was being retaliated against because of his speech and associations).

Accordingly, the Court finds that Plaintiff has failed to sufficiently allege a retaliation claim against Defendants Brightwell and Williams and, therefore, that they are entitled to qualified immunity on this claim.

**C.    Official Capacity Claims**

As noted above, Plaintiff has failed to sufficiently allege constitutional violations against any Defendant except for an equal protection claim and a retaliation claim against Defendant Reilly.  Because Plaintiff failed to do so, the Court finds that Plaintiff's claims

against Defendants in their official capacities, except for the equal protection claim and retaliation claim against Defendant Reilly, must also be dismissed.

## D.    Damages

Plaintiff seeks damages from Defendants in their individual capacities only.  *Am. Compl.* [#18] at 14.  Defendants argue that Plaintiff's claims for compensatory damages must be dismissed pursuant to the Prison Litigation Reform Act ("PLRA").  42 U.S.C. § 1997e(e) of the PLRA provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  Pursuant to Section 1997e(e), Plaintiff's "suit cannot stand unless he has suffered a physical injury in addition to mental or emotional harms."  *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999); *see also Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (holding that § 1997e(e) bars compensatory "damages for mental and emotional injuries in the absence of physical injury").  The limitations under § 1997e(e) apply only to suits for damages. Therefore, "§ 1997e(e) does not affect actions for declaratory or injunctive relief." *Perkins*, 165 F.3d at 807-08; *Searles*, 251 F.3d at 876.

Plaintiff asserts that his placement in "unassigned" status led to a substantial increase in time in his cell and restricted exercise time.  *Am. Compl.* [#18] at 5.  He contends that the lack of exercise led to headaches, chest pains, and other physical pain. *Id.*  It is clear that while a plaintiff's alleged physical injury "need not be substantial" to satisfy the § 1997e(e) requirement, it must be more than de minimis.  *Clifton v. Eubank*, 418 F. Supp. 2d 1243, 1245 (D. Colo. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 536 (3rd Cir. 2003)).  "Physical pain, standing alone, is a de minimis injury . . . and, accordingly, fails

to overcome the PLRA's bar . . . ." *Id.* at 1246 (citing *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005); *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)).  Accordingly, the Court finds that Plaintiff's allegations of physical pain stemming from his termination do not rise to a level protected by the PLRA, and that Plaintiff's claims for compensatory damages must be dismissed.

In addition, to the extent that Plaintiff requests punitive damages, he must claim that Defendants acted with an evil intent or with reckless indifference.  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  Here, interpreting Plaintiff's allegations as true, Defendant Reilly first tried to charge Plaintiff with unauthorized possession in spite of not doing so in similar instances involving other prisoners. *Am. Compl.* [#18 at 4.  When thwarted by Mr. Milburn, Defendant Reilly tried to charge Plaintiff with theft.  *Id.* at 5.  When again thwarted by Mr. Milburn, Defendant Reilly terminated Plaintiff from his job.  *Id.*  The Court finds that, at this early stage of litigation, Plaintiff has successfully alleged the level of intent required to plead a claim for punitive damages.  *See Lavicky v. Burnett*, 758 F.2d 468, 477 (10th Cir. 1985) (stating that a claim for punitive damages requires "evidence of malice, wantonness, or oppressiveness").

Therefore, based on the foregoing, the Court **recommends** that all claims made by Plaintiff be **dismissed** except for his equal protection claim and retaliation claim against Defendant Reilly, in his individual capacity for nominal and punitive damages, and in his official capacity for prospective injunctive relief.

## IV.  Conclusion

Accordingly,

IT IS RESPECTFULLY **RECOMMENDED** that Defendants' Motion [#19] be **GRANTED in part and DENIED in part**, as outlined above.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated January 17, 2013, at Denver, Colorado.

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge