IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00280-REB-KLM

GEORGE D. SARNO,

Plaintiff,

v.

JOHN REILLY,

Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant John Reilly's ("Reilly") **Motion for Summary Judgment** [#57][1] (the "Motion"). The Motion is referred to this Court for recommendation regarding disposition [#58]. Plaintiff, who proceeds in this matter pro se,[2] filed a Response [#59] in opposition to the Motion. Defendant Reilly filed a Reply [#63]. The Court has reviewed the Motion, the Response, the Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#57] be **GRANTED**.

---

[1] "[#57]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] The Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted). The Court, however, should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## I. Summary of the Case

Currently, Plaintiff is incarcerated with the Colorado Department of Corrections ("CDOC") at Limon Correctional Facility ("LCF"). *Am. Compl*. [#18] at 2. Defendant Reilly is the Correctional Industries Supervisor, Level III, at LCF. *Aff. of Reilly* [#57-1] at 1, ¶ 2. Plaintiff initially brought three claims against Defendants Reilly, Donald Brightwell ("Brightwell"), and Dino Williams ("Williams") in their individual and official capacities, pursuant to 42 U.S.C. § 1983. *Id.* at 2-4. First, Plaintiff asserted a due process claim pursuant to the Fourteenth Amendment. *Id.* at 10. Second, Plaintiff, as a class of one, asserted an equal protection claim pursuant to the Fourteenth Amendment. *Id.* at 11. Third, Plaintiff asserted a retaliation claim pursuant to the First Amendment. *Id.* at 12. Plaintiff sought a declaratory judgment and injunctive relief against each Defendant in his official capacity and nominal, compensatory, and punitive damages against each Defendant in his individual capacity. *Id*. at 14. On March 20, 2013, all claims against Defendants Brightwell and Williams were dismissed, and all claims against Defendant Reilly were dismissed except for the equal protection and retaliation claims against him in his individual capacity for nominal and punitive damages and in his official capacity for prospective injunctive relief. *Order* [#33].

The Court construes the factual record in the light most favorable to Plaintiff, the non-movant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Plaintiff states that he "maintained an above average work rating

for 20 years" while working at LCF. *Am. Compl*. [#18] at 4.[3] From 2005 to 2011, he worked at LCF's power sewing shop (the "Shop"). *Id.* "On September 21, 2011, after conducting pat down searches of offenders, Captain Robert R. Butcher [("Butcher")] informed [Defendant Reilly] that Plaintiff had six (6) plastic bags on his person that were discovered during the pat down search [(the "Incident")]." *Aff. of Reilly* [#57-1] at 1, ¶ 4. Plaintiff does not dispute that he left the Shop with plastic bags on his person. *Response* [#59] at 2. According to the Shop rules, "[r]emoving anything from the [S]hop that does not belong to you is grounds for termination." *Aff. of Reilly* [#57-1] Attach. A-3, at 10.

Later that day, Captain Butcher wrote an incident report about the Incident. *Id.* at 2, ¶ 9. In the summary of the report, Captain Butcher stated that Plaintiff was "found in possession of unauthorized items from [the Shop]." *Id.*, Ex. A-1, at 5. Defendant Reilly "reviewed [Captain Butcher's] report the following morning around 7:00 A.M. and terminated Plaintiff for violating the [Shop] rules." *Id.* at 2-3, ¶ 9. In Defendant Reilly's report, he states that Plaintiff "was found, while leaving the shop for the day, to have 6 plastic bags . . . . These bags did not belong to [Plaintiff], nor was he authorized to take them from his work site. . . . [Plaintiff] is no longer eligible for employment in the [Shop]. . . . [Plaintiff] is being laid in[4] pending Job Board decision of his job status." *Id.*, Attach. A-

---

[3] The Court considers the facts in the Amended Complaint because a pro se litigant's sworn complaint is equivalent to an affidavit for purposes of summary judgment. *See Adams v. Dyer*, 223 F. App'x 757, 764 n.7 (10th Cir. 2007) (citing *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988)); *see also Harris v. Denver Health Med. Ctr.*, No. 11-cv-01868-REB-MEH, 2013 WL 441539, at *7 (D. Colo. Jan. 31, 2013) (citations omitted); *West v. Yeaton*, No. 09-cv-01268-MSK-KLM, 2011 WL 42140, at *3 (D. Colo. Jan. 6, 2011).

[4] No explanation of the phrase "being laid in" is provided. *Cf. Response* [#59] at 2 ("On September 22, 2011 when Plaintiff reported for work, he was told (by Mr. Rick Tejada) that he was being layed [sic] in because of the previous days [sic] events and to return to the cell house[.]").

2, at 8. According to Defendant Reilly, after he completed his report, Plaintiff's employment was no longer within his "discretion or authority." *Id.* at 3, ¶ 10. Defendant Reilly asserts that "[a]t the time of Plaintiff's termination, [he] had established a workable relationship with Plaintiff, and had no ill will towards him." *Id.* at 3, ¶ 14. During the period between the Incident and Plaintiff's termination, Defendant Reilly did not have "any contact with Plaintiff, and to [his] knowledge, no complaints or grievances had been communicated or filed." *Id.* at 3, ¶ 11.

Plaintiff submitted to the Court an excerpt of the CDOC Code of Penal Discipline (the "Penal Code"). *Response* [#59] Ex. 1, at 18, Ex. 2, at 19, Ex. 3, at 20. The Penal Code governs the administrative actions taken by Captain Butcher and Defendant Reilly in connection with the Incident. *Id.*, Ex. 1, at 18. Plaintiff states that "unauthorized possession" is a Class II offense. *Id.* at 4 (citing *id.*, Ex. 1, at 18). According to the Penal Code's Formal Disposition Procedures (the "Procedure"), "[a]fter review of the [CDOC] employee or contract worker's incident report for determination of charges, a 'Notice of Charges' will be prepared. . . . If a Class I or Class II charge(s) is brought against an offender, appropriate supervisor(s) must begin an independent review, as soon as possible, but no later than two working days after the date of discovery of the alleged violation."[5] *Id.*,

---

[5] It is unclear if Defendant Reilly's report is, inter alia, the incident report required by the Penal Code, a different type of incident report, or a Notice of Charges regarding the unauthorized possession charge. Defendant does not comment on the Procedure. Plaintiff, however, asserts that he "never received a formal 'notice of charges' [for his unauthorized possession charge] . . . ." *Response* [#59] at 11. Despite its title (i.e. "Notice of Charges"), the excerpt from the Penal Code provided to the Court by Plaintiff does not state that a Notice of Charges must be provided to the inmate, only that it must be prepared by a CDOC employee or contract worker. *Id.*, Ex. 1, at 18. Furthermore, Plaintiff does not provide any evidence that it was Defendant Reilly's

Ex. 1, at 18 (internal citation omitted).

Officer Brightwell, the only member of LCF's Job Board, determined Plaintiff's job status following the Incident. *Am. Compl.* [#18] at 5. According to Plaintiff, Officer "Brightwell changed [Plaintiff's job] status to unassigned." *Id.* "[U]nassigned status prohibits an inmate from having a job for 30 days and the inmates [sic] loses all of his privileges." *Id.*

On September 22, Plaintiff was informed by Sergeant Gossitt that Plaintiff "was being expelled from the 'incentive unit' and to pack his belongings to make ready for his relocation from Building Five to Building One which [LCF] defines as a 'transitional building,' but in reality is just another punitive segregation concern." *Response* [#59] at 3. During Plaintiff's residency in Building One, "disciplinary and administrative segregation inmates were allowed a full hour out of their cells and allowed to exercise in their pod." *Am. Comp*. [#18] at 6. Plaintiff, however, could only leave his cell for "30 minutes daily from 7:00 PM to 7:30 PM Monday through Friday[]" and could not exercise in his pod. *Id.* Before the Incident, Plaintiff had followed an exercise regime in order to reduce his cholesterol levels. *Id.* Plaintiff's lack of exercise triggered "headaches, chest pains, and dizziness." *Id.* According to Plaintiff, his "mental health deteriorated to the point of paranoia [sic] experiences of dying in [his] sleep from a heart attack." *Id.* He "lost a lot [sic] of sleep from the experience and suffered physical pain." *Id.* Plaintiff believes that LCF's "treatment of

---

responsibility to prepare or provide him with a Notice of Charges relating to the unauthorized possession charge.

[him] under Warden Angel Medina's scheduling order for general population inmates" is unusual for inmates with criminal sentences like his own. *Id.* at 8.

Sometime between September 22, 2011, and September 27, 2011, Plaintiff learned that "he was scheduled for an 'Investigative/Disciplinary Hearing' [(the "Hearing")], with then Hearing Officer Lieutenant Brian E. Milburn [("Milburn")]." *Response* [#59] at 4. When Plaintiff arrived at the Hearing, Officer Milburn "handed Plaintiff a copy of a formal disciplinary report (write-up) drafted by [Defendant Reilly] charging Plaintiff with the Class II violation of 'unauthorized possession . . . .'" *Id.*; *see Aff. of Reilly* [#57-1] *A-2*, at 7-8. Although the record is unclear, this "write-up" may well be the Notice of Charges of which Plaintiff believes he was deprived regarding the unauthorized possession charge.

During the Hearing, Plaintiff "informed [Officer] Milburn that [he] had forgot [sic] to trash the bags after [he] threaded a sewing machine . . . ." *Id.* Plaintiff "reminded [Officer] Milburn that between 2005 to 2011 that [sic] a number of older inmates like [himself] with no prior disciplinary reports had inadvertently taken out more serious items." *Id.* Plaintiff also reminded Officer Milburn that "William Littermier had taken out a metal screw-driver and was excused[;] Simson Bay had lost scissors and was excused[;] [and] Inmate Warner had lost a pair of nippers and was excused also." *Id.* Officer Milburn "advised [Plaintiff] that he was aware of the previous incidents with the other inmates . . . ." *Id.* at 4-5. Officer Milburn told Plaintiff that he would "advise [Defendant Reilly] . . . [to not] charge [Plaintiff] with unauthorized possession." *Id.* at 5. Officer Milburn dismissed the unauthorized

possession charge against Plaintiff.[6] *Id.* at 4. After the Hearing, contrary to Plaintiff's expectations, Plaintiff remained in Building One and was not permitted to return to his previous employment at the Shop. *Id.* at 4-5. *Am. Compl*. [#18] Ex. B-3, at 20. Plaintiff asserts that Officer Milburn told Plaintiff that he (Officer Milburn) spoke with Defendant Reilly about the Hearing's outcome and that Defendant Reilly "took offense" to Plaintiff's exoneration and terminated Plaintiff's employment in the Shop. *Am. Compl.* [#18] at 5. Defendant Reilly, however, denies that any such conversation occurred. *Aff. of Reilly* [#57-1] at 3, ¶ 12 (Defendant Reilly "did not have any correspondence with [Officer Milburn] at any time prior to the decision to terminate Plaintiff, and [he] do[es] not recall having any conversation with [Officer Milburn] regarding Plaintiff's employment."). Plaintiff's assertion cannot be considered at summary judgment because it is not based on Plaintiff's personal knowledge and it would not be admissible at trial. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); Fed. R. Evid. 802 ("Hearsay is not admissible . . ."); *see also Allen v. Reid*, No. 07-cv-01225-WDM-MJW, 2008 WL 1925106, at *2 (D. Colo. Mar. 31, 2008) (quoting *Adams v. American Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000)) ("'Hearsay testimony that would be inadmissible at trial cannot

---

[6] Plaintiff offers no explanation for his inconsistent statements to the effect that Defendant Reilly would be asked to *withdraw* the unauthorized possession charge and Officer Milburn *dismissed* the charge. Regardless, the Court notes that the ultimate dismissal of the unauthorized possession charge against Plaintiff does not alter the fact that Plaintiff did remove plastic bags from the Shop, and that removal of Shop items from the Shop is "grounds for termination." *See Aff. of Reilly* [#57-1] Attach. A-3, at 10.

be used to defeat a motion for summary judgment because a third party's description of a witness' supposed testimony is not suitable grist for the judgment mill.'") (further internal quotation marks omitted).

In the Motion, Defendant Reilly argues that "Plaintiff's equal protection and retaliation claims against [him] in his individual capacity fail as a matter of law because [he] is entitled to qualified immunity." *Motion* [#57] at 7. According to Defendant Reilly, he "is entitled to qualified immunity on both Plaintiff's equal protection and retaliation claims because (1) there were no constitutional violations and (2) any constitutional right allegedly violated was not clearly established at the time of the events." *Id.* at 7-8. Defendant Reilly argues that there is no evidence that he violated Plaintiff's right to equal protection under the laws or that he retaliated against Plaintiff. *Id.* at 8, 12. Finally, Defendant Reilly argues that Plaintiff's requests for prospective injunctive relief and punitive damages fail as a matter of law. *Id.* at 17, 19.

In the Response, Plaintiff argues that, after his exoneration at the Hearing, he "was now entitled to a full restoration of all things that had been taken from him, (namely his job, and single-cell in the incentive unit) . . . ." *Id.* at 13.[7] According to Plaintiff, the restoration never occurred because "in a malicious, retalitory [sic] response to the success of the Plaintiff at the [H]earing, [Defendant Reilly] drafted a computer entry stating that the Plaintiff was now being terminated for 'theft with prejudice [(the "Computer Entry")].'" *Id.* Plaintiff

[7] Aside from his opinion and inadmissible evidence, Plaintiff offers no evidentiary support for this statement.

asserts that, in violation of the Penal Code, a CDOC employee or contract worker did not draft a Notice of Charges or a disciplinary report for this new charge, and Plaintiff did not receive a disciplinary hearing.[8] *Id.* at 5, 16-17; *see id.*, Ex. 1, at 18, Ex. 2, at 19, Ex. 3, at 20. Finally, Plaintiff argues that "Defendant [Reilly] is not entitled to summary judgment" because the law of the case doctrine bars Defendant Reilly from repeating arguments set forth in the Motion to Dismiss. *Id.* at 17.

In the Reply, Defendant Reilly argues that Plaintiff presented a new equal protection argument in the Response and that he "has offered no evidence in support of [his] conclusory allegation." *Reply* [#63] at 1.

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex,* 477 U.S. at 323. Summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* at 322 (quoting Fed. R. Civ. P. 56(c)[9]). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in

---

[8] Plaintiff does not provide any evidence that it was Defendant Reilly's responsibility to prepare or provide him with a Notice of Charges or disciplinary report, or to conduct a disciplinary hearing relating to the alleged Computer Entry theft charge.

[9] Since the decision in *Celotex*, Rule 56 has been amended, and Rule 56(a) now states that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999), *abrogation recognized by Eisenhour v. Weber Cnty.*, 744 F.3d 1220 (10th Cir. 2014). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998).

## III. Analysis

### A. Qualified Immunity

Defendant Reilly argues that he is entitled to qualified immunity in his individual capacity with regard to Plaintiff's equal protection and retaliation claims. *Motion* [#57] at 7. A prison official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a constitutional right that was clearly established at the time of the challenged conduct. *Plumhoff v. Rickard*, __ U.S. __, __, 2014 WL 2178335, at *9 (May 27, 2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. __, __, 131 S. Ct. 2074, 2080 (2011)). "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because the defense of qualified immunity is raised, the Court considers whether Plaintiff's factual allegations demonstrate that Defendant Reilly violated a constitutional right, and, secondly, whether that constitutional right was clearly established at the time of the alleged violation. *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001); *cf. Pearson v. Callahan*, 555 U.S. 223, 242 (2009). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

In order for Plaintiff's claim "to survive summary judgment, the record must contain facts that rebut the presumption of [Defendant Reilly's] immunity from suit." *Medina v.*

*Cram,* 252 F.3d 1124, 1130 (10th Cir. 2001); *see Anaya v. Crossroads Managed Care Sys., Inc.,* 195 F.3d 584, 593 (10th Cir. 1999) (denying summary judgment on qualified immunity where the "[t]he record supports the allegation that the plaintiffs' Fourth Amendment rights were violated"); *Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991) (noting that when "a government official raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must produce facts sufficient to show both that the defendant's alleged conduct violated the law and that [the] law was clearly established when the alleged violation occurred"); *Rounds v. Corbin*, No. 04-cv-02532, 2009 WL 2982006, at *2-3 (D. Colo. Sept. 11, 2009) (denying qualified immunity on summary judgment because plaintiff "submitted more than unsupported allegations" to support his claim); *Kelley v. City of Albuquerque,* 375 F. Supp. 2d 1183,1203 n.7 (D.N.M. 2004) (citing *Conaway,* 853 F.2d at 794) (noting that to overcome the defendant's motion for summary judgment on the basis of qualified immunity, the "plaintiff must do more than rest on [his or her] own speculation or pleadings").

**1. Equal Protection**

Under the Equal Protection Clause, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. XIV § 1. The Tenth Circuit affords substantial deference to prison officials when inmates bringing an equal protection claim do not allege discrimination based on a suspect classification such as race, national origin, or gender. *See Haik v. Salt Lake City Corp.*, No. 13-4050, 2014 WL 2523735, at *8 (10th Cir. Jun. 5, 2014); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1218 (10th Cir.

2011); *Gwin v. Awmiller*, 354 F.3d 1211, 1228 (10th Cir. 2004). A plaintiff who does not allege a suspect classification may assert an equal protection claim as a class of one. *Haik*, 2014 WL 2523735, at *8. A plaintiff who asserts a class-of-one claim "must first establish that others, 'similarly situated in every material respect' were treated differently." *Kan. Penn Gaming, LLC*, 656 F.3d at 1216 (citing *Jicarilla Apache Nation v. Rio Ariba Cnty.*, 440 F.3d 1202, 1210 (10th Cir. 2006)); *cf. City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Poe*, 457 U.S. 202, 216 (1982)) ("The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike.").

In this case, Plaintiff argues[10] that his "right to equal protection was violated when he did not receive a notice of charges or disciplinary hearing" with regard to the Computer Entry theft charge. *Response* [#57] at 16-17. According to Plaintiff, "all similarly situated inmates who are accused of committing" a Class II offense like theft are provided with a Notice of Charges and a disciplinary hearing. *Response* [#57] at 16-17; *see id.*, Ex. 1, at 18, Ex. 3, at 20.[11] Plaintiff asserts that he brings his equal protection claim "as a class of

---

[10] In the Amended Complaint, Plaintiff discusses three inmates who were not terminated from the Shop for losing or misplacing tools. *Am. Comp*. [#18] at 4. Plaintiff, however, affirmatively disavows making an argument that those inmates are similarly situated to himself. *Response* [#59] at 16 ("The Defendant seems to be under the impression that the Plaintiff's equal protection claim hinges on the Plaintiff being treated differently than the three individuals mentioned in the Plaintiff's claim. . . . [w]hich is not the case[.] [T]he Plaintiff only used these individuals as a comparison to show the arbitrary and capreciousness [sic] of [Defendant Reilly's] management style.").

[11] Defendant provides no evidence pertaining to a Notice of Charges or disciplinary hearing regarding the alleged Computer Entry. The Court need not resolve this issue to reach a conclusion

one." *Am. Compl*. [#18] at 11.

Defendant Reilly argues that he is entitled to qualified immunity with regard to Plaintiff's equal protection claim.[12] *Motion* [#57] at 7. According to Defendant Reilly, "Plaintiff has failed to point to evidence in the record showing that he was treated differently than another person who is similarly situated, without adequate justification for the difference in treatment." *Reply* [#63] at 3 (citing *City of Cleburne*, 473 U.S. at 439; *Jacobs*, 927 F.2d at 1118) (emphasis omitted). Defendant Reilly asserts that "Plaintiff merely relies on his own speculation and conclusory allegations in attempting to put forth a new equal protection argument in his response." *Id.*

Plaintiff's insufficient allegations do not demonstrate that he was treated differently from similarly situated inmates. *See Bones*, 366 F.3d at 875. Construing his allegations most favorably to Plaintiff, at best he asserts that he was treated differently because after a disciplinary charge against him was dismissed, Defendant Reilly created a Computer

---

about the merits of Plaintiff's equal protection claim.

[12] In the Response, Plaintiff argues that "Defendant is not entitled to summary judgment avering [sic] qualified immunity, or his argument against the Plaintiff's claim of a First Amendment violation . . . or [Fourteenth] Amendment violation . . . because these are issues that the Defendant's former council [sic] addressed in her 'Motion to Dismiss[]' . . . . [and are] barred by the Law of the Case Doctrine . . . ." *Response* [#59] at 17. Plaintiff, however, misunderstands the law of the case doctrine. *Cf. Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)) ("[T]he doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (second alteration in original). In the Recommendation on the Motion to Dismiss, the Court did not decide as a matter of law that Defendant was not entitled to qualified immunity with regard to Plaintiff's equal protection and retaliation claims, but rather that Plaintiff had alleged enough facts concerning his claims for them to survive that stage of the proceedings. *See Recommendation* [#27] at 21.

Entry charging him with theft which resulted in continued denial of Shop employment and privileges to Plaintiff, and Plaintiff received no Notice of Charges or disciplinary hearing regarding the theft charge. However, Plaintiff provides no admissible[13] evidence to establish the Computer Entry's existence or its creation by Defendant Reilly. In the absence of admissible evidence about the existence of the "Computer Entry," the Court cannot conclude that Defendant Reilly was responsible for Plaintiff's alleged different treatment. Moreover, Plaintiff has provided nothing more than conclusory allegations that he experienced *any* different treatment. He has submitted no evidence that other inmates whose disciplinary charges were dismissed did not experience denials of employment or privileges. Nor has he provided any evidence that other inmates were not subjected to different charges when original charges against them were dismissed. In addition, Plaintiff has provided no evidence that other inmates whose jobs were terminated did not experience denials of privileges in the absence of *any* disciplinary charges. Simply stated, Plaintiff has failed to muster evidence of how similarly-situated inmates – i.e., those whose employment was terminated but against whom disciplinary charges were dismissed – were treated. Hence, the record is devoid of evidence that Plaintiff was actually treated differently from similarly-situated inmates in these circumstances. *See Response* [#59]

---

[13] Plaintiff attempts to prove the existence of the Computer Entry by the submission of inadmissible hearsay testimony. *Response* [#59] at 5 (The Housing Lieutenant "informed Plaintiff that a later, rescent [sic] [C]omputer [E]ntry stated that the Plaintiff had been terminated for theft (a new charge), and that right after the word theft, appeared two asterisks which he (the Housing Lieutenant) thought stood for 'with prejudice' . . . . The Housing Lieutenant also informed Plaintiff that it was [Defendant Reilly] who initiated the [C]omputer [E]ntry."*); see* Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 802; *see also Allen*, 2008 WL 1925106, at *2 (quoting *Adams*, 233 F.3d at 1246).

at 16-17.

Accordingly, Plaintiff has failed to establish that his right to equal protection under the law was violated because he was treated differently from similarly situated inmates. *See Kan. Penn Gaming*, *LLC*, 656 F.3d at 1216. Defendant Reilly is entitled to qualified immunity from liability for damages with regard to this claim. *See Boles*, 486 F.3d at 1180. The Court, therefore, need not consider the second prong of the qualified immunity test. See *Saucier*, 533 U.S. at 200-01 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

Accordingly, the Court **recommends** that judgment be entered in favor of Defendant Reilly in his individual capacity on Plaintiff's equal protection claim.

**2. First Amendment Retaliation**

The First Amendment prohibits prison officials from retaliating against inmates for exercising their right to participate in the prison grievance process. *Rogers v. Garcia*, No. 08-cv-02821-WYD-MJW, 2010 WL 3547432, at *5 (D. Colo. Sept. 3, 2010) (citing *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992); *Frazier v. Dubois*, 922 F.2d 560, 562 (10th Cir. 1990); *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990)). Retaliatory acts under 42 U.S.C § 1983 include acts that would otherwise be permissible if they were not conducted in retaliation. *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 847 (10th Cir. 2005) (citing *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir. 1990)); *Maschner*, 899 F.2d at 948. For example, prison officials cannot terminate inmates from their jobs in retaliation

for participating in the prison grievance process. *See Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) (citing *Frazier*, 922 F.2d at 561-62).

Inmates alleging retaliation bear a "substantial burden." *Kan. Penn Gaming*, *LLC*, 656 F.3d at 1217 (quoting *Jicarilla*, 440 F.3d at 1212) (further citation omitted). They must allege:

> (1) that plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Mimics*, 394 F.3d at 847 (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (quotations omitted)).

The first element the Court considers is whether Plaintiff "was engaged in constitutionally protected activity." *See Mimics*, 394 F.3d at 847. Plaintiff argues that Defendant Reilly retaliated against him because Plaintiff exercised his "constitutional right[] to petition the government for redress of grievance[s] . . . ." *Am. Compl*. [#18] at 8. The right of access to the courts is a constitutionally protected right, and that right encompasses access to the prison grievance process. *See, e.g.*, *Sherrat v. Utah Dep't of Corr.*, 545 F. App'x 744, 747 (10th Cir. 2013) (citing *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006); *Maschner*, 899 F.2d at 947-48). Accordingly, Plaintiff's use of the grievance process was protected conduct, and, therefore, satisfies the first element of a First Amendment retaliation claim. *See Mimics*, 394 F.3d at 847.

The second element the Court considers is whether Defendant Reilly's "actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Id.* "This objective inquiry is 'not static across contexts,' but rather must be 'tailored to the different circumstances in which retaliation claims arise.'" *Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)). The injury alleged may be "no more tangible than a chilling effect.'" *Rogers*, 2010 WL 3547432, at *4 (quoting *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001)). Moreover, "'[s]peech can be chilled even when not completely silenced.'" *Id.* at *4 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005)).

Plaintiff's pleadings arguably allege several "actions" or combinations of actions that form the basis for his First Amendment retaliation claim. Those actions are: (A) termination of his employment; (B) creation of the alleged Computer Entry charging him with theft; (C) failure to provide a Notice of Charges regarding the theft charge; (D) failure to conduct a disciplinary hearing regarding the theft charge; and (E) continued denial of privileges after his exoneration regarding the unauthorized possession charge. In short, regardless of which action or combination of actions is considered, Plaintiff cannot prevail. As discussed in more detail below, (A) there is no genuine issue of material fact regarding whether Plaintiff's employment was terminated after his alleged exercise of constitutional rights. It was not. Thus, he cannot establish that termination of his employment was retaliatory; (B)

there is no admissible evidence to establish creation of the alleged Computer Entry, and hence no genuine issue of material fact regarding this alleged event; (C) see (B) above, and there is no evidence that Defendant Reilly was responsible for this alleged action; (D) see (B) above, and there is no evidence that Defendant Reilly was responsible for this alleged action; and (E) there is no evidence that denial of privileges occurred only after the exercise of Plaintiff's constitutional rights and he therefore cannot establish that it was retaliatory, and there is no evidence that Defendant Reilly was responsible for this action.

Plaintiff states that Defendant Reilly "chang[ed] the incident report to theft" in retaliation for Plaintiff's success at the Hearing. *Am. Compl*. [#18] at 5. Plaintiff believes he was terminated from the Shop because of this charge. *Response* [#59] at 15. Plaintiff's termination for removal of plastic bags from the Shop would otherwise be proper under the Shop rules, but any retaliatory impetus for termination would make it improper. *See Mimics*, 394 F.3d at 847; *Aff. of Reilly* [#57-1] Attach. A-3, at 10. The effect of Defendant's alleged actions would rise to the level of chilling in these circumstances if the existence of the Computer Entry were substantiated.[14] *Cf. Zarska v. Higgins*, 171 F. App'x 255, 259 (10th Cir. 2006) (quoting *Poole v. Cnty. of Otero*, 271 P.3d 955, 960, *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250, 256 (2006)) (footnote omitted) ("[W]e hold that [Defendant's] alleged filing of disciplinary proceedings to retaliate for a report of misconduct 'would chill a person of ordinary firmness from continuing to engage in that

[14] *See* n.13, *supra*.

activity.'").

However, as explained above, there is no admissible factual support for the existence of the Computer Entry, which Plaintiff alleges resulted in his job termination. In addition, the evidence is undisputed that Plaintiff's job termination *preceded* both the disciplinary hearing for the unauthorized possession charge and the alleged Computer Entry, which forecloses any possibility that the termination was retaliatory under the chronology presented. *Response* [#59] at 2-4; *Aff. of Reilly* [#57-1] at 2-3, ¶ 9. To the extent that Plaintiff is attempting to assert that he was denied privileges in retaliation for his exercise of his constitutional rights at the disciplinary hearing, he presents no admissible evidence linking the denial of those privileges to Defendant Reilly. Furthermore, according to Plaintiff himself, it was Officer Brightwell who changed Plaintiff's job status, which, in turn, caused Plaintiff's loss of privileges. *Am. Comp.* [#18] at 5. Therefore, Plaintiff fails to show that the alleged adverse action was taken by the named defendant, and the second element of the claim remains unmet.

In sum, there is no genuine issue of material fact regarding the second element of a retaliation claim because Plaintiff provides no evidence that it was *"defendant's actions* [that] caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *See Mimics*, 394 F.3d at 847 (emphasis added).

Finally, because there is no evidence that the named defendant took the alleged retaliatory actions against Plaintiff, it is clear that his claim cannot survive summary

judgment. Nevertheless, in the interest of thoroughness, the Court addresses whether there is a genuine issue of material fact regarding the third element of a retaliation claim. As discussed above, in order to succeed on his claim, Plaintiff must demonstrate that "the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Id.* "Substantially motivated" includes protected conduct "where evidence showed (1) the defendants were aware of the protected activity; (2) the plaintiff directed his complaint to the defendants' actions; and (3) the alleged retaliatory act 'was in close temporal proximity to the protected activity.'" *Allen v. Avance*, 491 F. App'x 1, 6 (10th Cir. 2012) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010)).

Plaintiff believes that "in a malicious, retalitory [sic] response to the success of the Plaintiff at the [H]earing, [Defendant Reilly] drafted a computer entry stating that the Plaintiff was now being terminated for 'theft with prejudice.'" *Response* [#59] at 13. Defendant Reilly asserts that he terminated Plaintiff from his job at the Shop because Plaintiff violated the Shop rules. *Aff. of Reilly* [#57-1] at 2-3, ¶ 9; *cf. id.,* Attach. A-3, at 10 ("Removing anything from the [S]hop that does not belong to you is grounds for termination."). According to Defendant Reilly, he "had established a workable relationship with Plaintiff, and had no ill will towards him." *Id.* at 3, ¶ 14. Defendant Reilly asserts that he "did not have any correspondence with [Officer Milburn] at any time prior to the decision to terminate Plaintiff, and [he] do[es] not recall having any conversation with [Officer Milburn]

regarding Plaintiff's employment." *Id.* at 3, ¶ 12. Defendant Reilly states that Plaintiff's employment was no longer within his "discretion or authority" after he completed his report. *Id.* at 3, ¶ 10. Defendant Reilly further asserts that he terminated Plaintiff's employment *before* the Hearing was held, *Id.* at 2-3, ¶ 9; *see id.*, Attach. A-2, at 7-8, and Plaintiff acknowledges being turned away from work and told to return to his cell before the Hearing. *Response* [#59] at 2.

Assuming arguendo that Plaintiff's allegation about the Computer Entry were undisputed, Plaintiff still fails to establish that Defendant Reilly was substantially motivated to act in retaliation for Plaintiff's success at the Hearing. *See Allen*, 491 F. App'x at 6. Plaintiff does not establish that Defendant knew about the Hearing's outcome, *cf. Aff. of Reilly* [#57-1], at 3, ¶ 10, and, even if Defendant Reilly did know of the outcome, Plaintiff does not provide evidence contradicting Defendant Reilly's statement that he had no "discretion or authority" over Plaintiff's employment after he completed his report. *See id.* at 3, ¶ 10. Furthermore, Defendant Reilly avers that he bore Plaintiff no "ill will," and Plaintiff does not provide evidence that he and Defendant Reilly had a contentious relationship or previous instances of conflict. *Id.* at 3, ¶ 14; *see generally Am. Compl*. [#18]; *Response* [#59]. To the extent that Plaintiff is attempting to assert that denial of privileges was the retaliatory act, the chronology fails to support this contention. Plaintiff avers that he was informed that he was being expelled from the incentive unit on September 22, and that he learned he had a disciplinary hearing sometime between September 22 and

September 27. *Response* [#59] at 3-4. Hence, despite the lack of a date for the Hearing in the record, it is undisputed that the Hearing occurred *after* Plaintiff was notified that privileges would be revoked. This timeline disproves retaliation based on Plaintiff's statements at the Hearing. To the extent that creation of the Computer Entry was the alleged retaliatory act, Plaintiff does demonstrate a temporal proximity between his success at the Hearing and the alleged Computer Entry because he asserts that Defendant Reilly, hours or a few days after the Hearing, created it in retaliation for the Hearing's outcome. *Am. Compl.* [#18] at 5. This temporal proximity, however, is insufficient by itself to establish Defendant Reilly's retaliatory motive. *See Baldauf v. Hyatt*, No. 01-cv-01315-REB-CBS, 2008 WL 280839, at *8 (D. Colo. Jan. 31, 2008) (citing *Butler v. City of Prairie Village, Kan.,* 172 F.3d 736, 746 (10th Cir. 1999)) ("Temporal proximity is insufficient, without more, to establish retaliatory motive."). Moreover, there is no admissible evidence that the Computer Entry exists.

In conclusion, Plaintiff does not satisfy the third element of a First Amendment retaliation claim, *see Mimics*, 394 F.3d at 847, and Defendant Reilly is entitled to qualified immunity from liability for damages with regard to this claim. *See Boles*, 486 F.3d at 1180. The Court, therefore, need not consider the second prong of the qualified immunity test. See *Saucier*, 533 U.S. at 200-01.

Accordingly, the Court **recommends** that judgment be entered in favor of Defendant Reilly in his individual capacity on Plaintiff's retaliation claim.

**B. Injunctive Relief**

The Court next addresses Plaintiff's claim for prospective injunctive relief against Defendant Reilly in his official capacity. Claims against public officials in their official capacities are essentially claims against the governmental entity itself. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690-91 & n.55 (1978). Because the Court has already found that Plaintiff has failed to provide evidence establishing a violation of his First or Fourteenth Amendment rights, the Court must necessarily recommend that the claim asserted against Defendant Reilly in his official capacity fails as well.

Accordingly, the Court **recommends** that judgment be entered in favor of Defendant Reilly in his official capacity on Plaintiff's request for injunctive relief. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990).

**III. Conclusion**

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendant Reilly's Motion for Summary Judgment [#57] be **GRANTED**, and that summary judgment be entered in favor of Defendant Reilly on all remaining claims in this action.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*,

474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: July 22, 2014

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge